UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAIN DEVEROUX AND JENNIFER VALLE, individually, and as successors in interest of JULIEN DEVEROUX,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KERN, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-00239-CDB<br><br>ORDER DENYING PLAINTIFFS' MOTIONS TO STRIKE<br><br>(Docs. 182, 183, 184)<br><br>ORDER RESETTING BRIEFING AND HEARING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>(Docs. 178, 179, 187)<br><br>ORDER CONTINUING PRE-TRIAL CONFERENCE<br><br>(Docs. 48, 164) |

**I.     Background**

Plaintiffs, as individuals and co-successors in interest of Julien Deveroux (the "Decedent"), initiated this action with the filing of a complaint against Defendants on February 15, 2023. (Doc. 1). On October 4, 2023, the Court entered the scheduling order setting forth the case management dates. (Doc. 48). On May 15, 2025, the Court granted the parties' eighth stipulated request to amend the scheduling order. (Doc. 164). Pursuant to the amended scheduling order, the operative

non-expert discovery deadline, as well as non-dispositive and dispositive motion filing deadline, was August 7, 2025.  On that day, County Defendants filed their motion for summary judgment (Doc. 178) and Defendant Nicholas Torrez filed his motion for summary judgment (Doc. 179).  On August 11, 2025, Plaintiffs filed two motions to strike, one for each aforementioned motion for summary judgment.  (Docs. 182-184).  On August 18, 2025, the Court issued an order setting an expedited briefing schedule for the motions to strike, holding the motions for summary judgment in abeyance, and directing the parties to file a joint report setting forth any mutually agreeable modifications to the dates in the scheduling order.  (Doc. 185).  On August 15, 2025, the parties filed their joint report.  (Doc. 187).  That same day, the County Defendants filed their opposition to the motion to strike.  (Doc. 186).  On August 18, 2025, Defendant Torrez filed his opposition.  (Doc. 188).  Plaintiffs filed their replies on August 22, 2025.  (Docs. 190, 191).

**II.    Governing Law**

District courts have "inherent power" to control their dockets, *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992), and enter scheduling orders to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3).  Once entered, a scheduling order "controls the course of the action unless the court modifies it."  Fed. R Civ. P. 16(d).  Scheduling orders are intended to alleviate case management problems.  *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 610 (9th Cir. 1992).

Under Federal Rule of Civil Procedure 16(b), a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  *Johnson*, 975 F.2d at 609.  If the moving party is unable to reasonably meet a deadline despite acting diligently, the scheduling order may be modified.  *Id*.  If, however, the moving party "'was not diligent, the inquiry should end' and the motion to modify should not be granted."  *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).

"Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."  *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012).  The district court has "broad discretion in supervising the pretrial phase of litigation."

*Zivkovic*, 302 F.3d at 1087 (quoting *Johnson*, 975 F.2d at 607).

## III. Discussion

The Court entered its initial scheduling order on October 4, 2023. (Doc. 48). Therein, the Court required any party intending to file a motion for summary judgment to meet and confer 21 days in advance of said filing, either in person or by telephone. The moving party must initiate the meet and confer process. Five days prior to the conference, the moving party must provide a complete proposed statement of undisputed facts. The notice of motion must certify that the parties met and conferred as required, or set forth good cause for the failure to meet and confer. *Id*. at 4-5.

The Court noted that the purpose of the meet and confer is to: "1) avoid filing motions for summary judgment where a question of fact exists; 2) determine whether the respondent agrees that the motion has merit in whole or in part; 3) discuss whether issues can be resolved without the necessity of briefing; 4) narrow the issues for review by the court; 5) explore the possibility of settlement before the parties incur the expense of briefing a motion; and 6) to develop a joint statement of undisputed facts." *Id*. at 4.

Under the original scheduling order, the deadline to exchange proposed statements of facts and meet and confer in connection with any party's anticipated motion for summary judgment fell on a date approximately six weeks after the close of discovery.

As set forth in more detail below, in their motions to strike, Plaintiffs argue Defendants missed these summary judgement motion pre-filing deadlines, and further, failed to adequately engage in the required meet/confer process.

### A. Representations in Plaintiffs' Motions to Strike

In their motions to strike, Plaintiffs assert that counsel for Defendants failed to timely meet and confer as required in the scheduling order (Doc. 48). Counsel for Plaintiffs Jeff Dominic Price declares that the representations of Stephanie Virrey Gutcher, counsel for County Defendants, regarding meet and confer communications with Plaintiffs in connection with their motion for summary judgment were "misleading and incorrect." (Doc. 182-1 ¶ 3). Mr. Price attests that conversations were "brief and sporadic," "did not involve any substantive discussion of any specific

1  arguments, theories, claims," and "never involved any specific facts of the type that would appear
2  in a statement of undisputed facts." *Id.*  Mr. Price attests that counsel for County Defendants "did
3  not attempt to meet and confer on any specific factual statements or on a statement of undisputed
4  facts until the afternoon of August 1, 2025," when her staff sent a statement of undisputed facts to
5  Mr. Price "without any warning." *Id.*  Mr. Price declares that this violation of the provisions of the
6  scheduling order resulted in prejudice to Plaintiffs due to resulting changes regarding the noticing
7  of depositions, as upon failure of the County Defendants to serve a proposed statement of
8  undisputed facts, Mr. Price "determined that the Defendants were not going to file a motion for
9  summary judgment." *Id.* ¶¶ 4-9.

10   Regarding the motion for summary judgment filed by Defendant Torrez, Mr. Price declares
11  that the statements in the declaration of counsel for Torrez, Lia Hsu, concerning meet and confer
12  discussions are "misleading" and do not "show compliance with the Scheduling Order."  (Doc.
13  184-1 ¶ 3).  Mr. Price states that "no discussions were initiated until Tuesday, August 5, 2025,"
14  when Ms. Hsu informed Mr. Price that Torrez intended to file a motion for summary judgment,
15  only after Mr. Price "copied Ms. Hsu on an email to Ms. Gutcher informing her that the deadlines
16  set forth in the Scheduling Order for meeting and conferring … had passed." *Id.*  Mr. Price states
17  that he informed Ms. Hsu that the relevant deadlines in the scheduling order had passed; Ms. Hsu
18  stated that the scheduling order was "issued before Nicholas Torrez had been served as a defendant
19  in this case." *Id.* ¶ 4.  Mr. Price asserts that he received an email from counsel for Torrez, David
20  Reis, on August 7, 2025, listing issues that Torrez "intended to raise in a motion for summary
21  judgment," and sending a proposed statement of undisputed facts later that same day. *Id.* ¶¶ 8-9.
22  Mr. Price attests that, after Torrez did not serve the statement of undisputed facts or initiate a
23  conference on any motion for summary judgment by the deadlines established in the scheduling
24  order, he "assumed that they were not going to file a motion for summary judgment." *Id.* ¶ 10.  Mr.
25  Price declares that this violation of the provisions of the scheduling order resulted in prejudice to
26  Plaintiffs due to deprivation of several weeks' time to prepare an opposition to any such motion
27  and "to conduct discovery in response to Defendant's theory of the case." *Id.* ¶ 11.
28  ///

### B. Representations in County Defendants' Opposition

In their opposition, County Defendants assert that the parties "met and conferred specifically regarding the motion for summary judgment multiple times." (Doc. 186 at 3). The opposition attaches the declaration of Stephanie Virrey Gutcher. (Doc. 186-1). Ms. Gutcher represents that the parties "have engaged in documented discussions regarding the dismissal of De La Torre and Amparo since November 2024," involving the "limited interaction many of the named defendants had with Julian Deveroux." *Id.* ¶¶ 4-5 (citing Exs. B, C). In late March and early April, the parties began discussions regarding the motion for summary judgment. *Id.* ¶ 7 (citing Ex. E). Ms. Gutcher represents that she sent Plaintiffs' counsel an email on April 8, 2025, "asking about a stipulation the parties were discussing," advising that she was "'still working on it [the MSJ] since the continuance isn't guaranteed, but I'm stuck on the facts since I may not need to address facts related to some defendants …'" *Id.* ¶ 9 (quoting Ex. F).

Ms. Gutcher provides that, throughout May 2025, the parties exchanged emails regarding dismissal of certain defendants in anticipation of an upcoming motion for summary judgment, as well as depositions in advance of the motion. The parties conferred telephonically regarding the motion on May 13, 2025, and agreed to stipulate to dismissal of certain defendants as well as request another extension of time, with four of said defendants to be dismissed specifically addressed in the arguments in the motion for summary judgment. *Id.* ¶¶ 12-16 (citing Exs. H, I, J, K, L).

In June 2025, Ms. Gutcher represents that she inquired with Plaintiffs' counsel regarding said dismissals as they related to discovery concerns, in total prompting counsel on five different occasions as to the dismissals. *Id.* ¶¶ 17-21 (citing Exs. M, N, O, P, Q). Ms. Gutcher declares that, in July 2025, the parties "exchanged 67 emails, participated in a mediation together, and scheduled an in-person site visit for August 4, 2025. Not one of those emails did plaintiffs complain [sic] about a further meet and confer for the MSJ, nor is the topic of the statement of facts ever raised." *Id.* ¶ 22 (citing Exs. M, N, O, P, Q). During the mediation, "the parties thoroughly discussed the anticipated MSJs and the subject of a late statement of facts was never raised after mediation." *Id.* ¶ 23.

Ms. Gutcher attests that paralegal Stacy Willard served the proposed statement of

5

1  undisputed facts on August 1, 2025 (six days in advance of the summary judgment motion filing
2  deadline).  Upon service, Ms. Gutcher learned that said statement "should have been served earlier."
3  *Id.* ¶ 24.  And upon researching the missed deadline, her office determined that Ms. Willard
4  calendared the last day to provide the joint statement of undisputed facts as July 11, 2025, but "for
5  unknown reasons" changed the date to August 1, 2025.  *Id.* ¶¶ 26-30 (citing Ex. R).  Ms. Gutcher
6  declares that the parties did "meet and confer multiple times."  *Id.* ¶ 33.  She represents that she
7  believes "the purpose of the meet and confer was met," as the parties "discussed multiple different
8  individual defendants" and did not agree on *Monell* issues, as well as the fact that "the issues could
9  not be resolved or limited without briefing," they could not be narrowed until the dismissals of
10 certain defendants were "finally filed despite almost [six] months of promises," the parties engaged
11 in settlement discussions, and the "moving party attempted to provide a joint statement of facts."
12 *Id.* ¶ 34.

13     Ms. Gutcher attests that "[a]pproximately one[-]third of the facts are lifted straight from the
14 [second amended complaint]" and that "Plaintiff simply refused."  *Id.* ¶ 35 (citing Ex. S).  Upon
15 review of Exhibit S, the Court presumes Ms. Gutcher intended to express that Plaintiffs refused to
16 discuss the statement of facts.  *See* (Doc. 186-20 at 2-6).  Ms. Gutcher also declares that "roughly
17 [nine] facts are from videos plaintiffs have had since August of 2024," "roughly 75 facts are lifted
18 straight from discovery" which "[P]laintiffs have had since the outset of this case," and "roughly
19 20 facts relate to policy, which had to be done by declaration since the 30(b)(6) deposition was
20 noticed for August 4, 2025, three days prior to the MSJ due date."  *Id.* ¶ 36.

21                    **C. Representations in Defendant Torrez's Opposition**

22     In his opposition, Torrez asserts that "while the scheduling order predates [his] involvement
23 in this case as a Defendant, he nonetheless has been diligent in participating in substantial meet and
24 confer discussions with the other parties throughout the pendency of this litigation," and that he
25 "diligently responded to discovery" and "attempted to resolve this matter through mediation and
26 informal settlement negotiations."  (Doc. 188 at 5).  He states that his motion for summary judgment
27 "primarily relies on Plaintiffs' own evidence."  *Id.* at 6.

28     The opposition attaches the declaration of Lia S. Hsu.  (Doc. 188-1).  Ms. Hsu represents

6

1  that Torrez was named as a defendant herein with the filing of the first amended complaint on July
2  5, 2024, "has diligently participated in discovery," and was deposed by Plaintiffs' counsel on
3  February 17, 2025. *Id.* ¶ 3. Ms. Hsu attests that, between March and April 2025, the parties
4  discussed the Defendants' motions for summary judgment, with Torrez intending to file a joint
5  motion with the County Defendants, based on his former employment with Kern County, ultimately
6  deciding to file his own separate motion. *Id.* ¶ 4.

7  Ms. Hsu declares that Torrez and Plaintiffs "engaged in numerous phone conversations to
8  discuss the parties' respective theories throughout the pendency of this case and leading up to the
9  global mediation in July 2025." Ms. Hsu states that the parties continue to have "informal
10 settlement negotiations" as to Torrez, mentioning telephonic conferences on April 8 and May 12,
11 2025, to "further discuss the issues presented in the modified scheduling order," with "these
12 discussions form[ing] the basis for the filed stipulations to modify the scheduling order." *Id.* ¶ 5
13 (citing Docs. 159, 163).

14 Ms. Hsu represents that Defendant Dylan Rice, a sheriff's deputy, was deposed by Plaintiffs
15 on July 31, 2025, and provided "further clarity" as to Torrez's involvement. The following week,
16 Torrez filed his motion for summary judgment and, as with County Defendants, the separate
17 statement of undisputed facts in support "primarily relies on Plaintiffs' evidence, including the
18 operative [c]omplaint and expert report (Sperry Report)." *Id.* ¶ 6. Ms. Hsu states that the parties
19 "sufficiently met and conferred prior to the filing of Defendants' respective motions," that the
20 "ongoing development of the record" continuing up until the filing deadline of August 7, 2025,
21 "did not allow for the parties to exchange the statement of facts six weeks before the deadline" as
22 set forth in the scheduling order (Doc. 48), and that "any prejudice is curable through a slight
23 modification of the scheduling order," particularly as Torrez "presented a proposed statement of
24 undisputed facts favorable to Plaintiffs' theory of the case by mainly relying on Plaintiffs' own
25 evidence." *Id.* ¶ 8.

### D. Representations in Plaintiffs' Replies

27 In Plaintiffs' replies to the respective oppositions, Plaintiffs assert that there was no good
28 cause for Defendants' failure to comply with the scheduling order and Defendants fail to show how

Plaintiffs were not prejudiced. (Doc. 190 at 1; Doc. 191 at 1).

Plaintiffs attach declarations of counsel Mr. Price. (Docs. 190-1, 191-1). Regarding County Defendants, Mr. Price represents that statements in County Defendants' opposition regarding the parties' discussions of *Monell* claims are untrue as "the substance of the *Monell* claims was never discussed (as the state law claims were never discussed)." (Doc. 190-1 ¶ 10). Mr. Price provides that interrogatories were propounded to Defendants Saldana, Woosley, Sosa, and Rivera. *Id.* ¶¶ 2-3. Mr. Price attaches responses therefrom (Docs. 190-2, 190-3, 190-4, 190-5, 190-6), stating that said responses are "deficient and frivolous," with several responses "not credible." *Id.* ¶¶ 4-5. Mr. Price states that Defendant De La Torre was one of the individuals "shown on video and later identified by means of interrogatories" who was "significantly involved with the transport of Julien Deveroux from court to his cell on the afternoon of January 11, 2022 …" *Id.* ¶ 8. Mr. Price asserts that County Defendants' statement that the parties discussed the anticipated motions for summary judgment during the mediation should be stricken as barred by Federal Rule of Evidence 408 and the applicable confidentiality agreement. *Id.* ¶ 9.[1]

Plaintiffs assert that "[n]one of the purposes of the meet and confer process specified in the scheduling order were met at any time before August 1, 2025," despite Plaintiffs twice agreeing to extensions of the dispositive motion deadlines after Defendants had missed the deadlines for meeting and conferring and transmittal of the statement of undisputed facts. (Doc. 190 at 6-7).

Regarding Torrez, Mr. Price represents that conversations between Plaintiffs and Torrez "did not involve any substantive discussion of any specific argument, theories, claims, including *Monell* claims, or caselaw that might be presented in a motion for summary judgment," said

---

[1] Counsel did not provide a citation. The Court presumes counsel intended to refer to (Doc. 186-1 ¶ 23). "Generally, Federal Rule of Evidence 408 prohibits evidence of settlement negotiations to establish the strength or weakness of a claim. However, courts may admit this type of evidence for another purpose." *HP Tuners, LLC v. Cannata*, No. 3:18-CV-00527-LRH-CSD, 2023 WL 1071782, at *10 (D. Nev. Jan. 27, 2023) (quotation omitted) (citing, *inter alia*, *Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, [or] negating contention of undue delay[.]")).

Nor does Plaintiff cite authority for any proposition that the Federal Rules of Evidence apply to motions to strike. In all events, as the Court would come to the same decision on Plaintiffs' motions independent of the disputed statement, the Court will not reach Plaintiffs' claim that said statement should be stricken.

8

conversations did not involve "any specific facts of the type that would appear in a statement of undisputed facts," and said conversations did not involve "more than a small number of individual defendants, and such discussions involving Nicholas Torrez were not initiated until August 5, 2025." (Doc. 191-1 ¶ 1). Plaintiffs assert that "[t]here was no substantive conference between Plaintiffs and Defendant Torrez before August 5, 2025." (Doc. 191 at 3).

In both replies, Plaintiffs cite to prior court decisions for the proposition that courts within the Ninth Circuit "routinely decline to adjudicate the merits of an untimely motion for summary judgment absent a showing of good cause." (Doc. 190 at 3; Doc. 191 at 3) (citing *Garces v. Gamboa*, No. 1:21-CV-00392-JLT-EPG (PC), 2024 WL 1886620, at *2 (E.D. Cal. Apr. 30, 2024); *Ski Lifts, Inc. v. Schaeffer Mfg. Co.*, No. C19-0062-JCC, 2020 WL 978505, at * 2 (W.D. Wash. Feb. 28, 2020); & *Roberts v. Skin Cancer & Cosm. Dermatology Ctr. PC*, No. CV-18-03433-PHX-DJH, 2019 WL 13227527, at *2 (D. Ariz. Dec. 11, 2019).

The attachments to the declaration (Docs. 190-2 to 190-6) were reviewed by the Court and will be referenced below if necessary to this Court's decision.

**E. Analysis**

*1. Defendants' Failure to Comply with the Scheduling Order*

It is clear that both Torrez and the County Defendants failed to comply with the provisions of the scheduling order. Counsel for the County Defendants concedes that their statement of undisputed facts was provided to Plaintiffs on August 1, 2025, only six days prior to the filing deadline. (Doc. 186-1 ¶ 24). Counsel provides that this was the result of a scheduling error. *Id.* ¶¶ 24, 26-30.

Insofar as counsel indicates that staff may be partly responsible for the failure to adhere to the provisions of the scheduling order, Rule 5.3 of the California Rules of Professional Conduct provides "[w]ith respect to a nonlawyer employed or retained by or associated with a lawyer," "a lawyer having direct supervisory authority over the nonlawyer, whether or not an employee of the same law firm, shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer" and "shall be responsible for conduct of such a person[.]" *See* Cal. Rules Prof. Conduct 5.3(b) & (c). As such, under the circumstances, staff

negligence or carelessness does not constitute a sufficient showing to excuse County Defendant's failure. *See* Cal. Rules Prof. Conduct 5.3(c) ("[A] lawyer shall be responsible for the conduct [of his nonlawyer employee] ... if: (1) the lawyer orders or, with knowledge of the relevant facts and of the specific conduct, ratifies the conduct involved[.]"). Therefore, the County Defendants failed to meet and confer and provide to Plaintiffs their statement of undisputed facts as required by the scheduling order.

Counsel for Torrez does nothing to rebut Plaintiffs' counsel's representations that "no discussions were initiated until Tuesday, August 5, 2025," with a proposed statement of undisputed facts provided on the day of the filing deadline, August 7, 2025. (Doc. 184-1 ¶ 3, 8-9).

Torrez appears to represent that, as he was added to the action after the issuance of the initial scheduling order, it presumably is inapplicable to his participation in this action. (Doc. 188 at 5). Torrez cites to no authority for such a proposition. Indeed, to hold as such would render the scheduling order all but superfluous as to defendants added after commencement of an action, with the untenable result of a two-speed action where defendants added prior to the scheduling order are held to a different, and presumably stricter, standard than those added after. Further, counsel for Torrez represents that the "ongoing development of the record" continuing up until the filing deadline of August 7, 2025, "did not allow for the parties to exchange the statement of facts six weeks before the deadline." (Doc. 188-1 ¶ 8). The Court sees no reason why an "ongoing development of the record" would result in an inability of counsel to provide a statement of facts setting forth the information counsel possessed at the time, as set forth in the scheduling order. Therefore, Defendant Torrez failed to meet and confer and provide to Plaintiffs his statement of undisputed facts as required by the scheduling order.

### 2. *Resulting Prejudice*

Though the Court does not excuse Defendants' failure to strictly comply with the scheduling order's provisions governing the sequencing of motions for summary judgment, it does not appear to the Court that Plaintiffs suffered prejudice from Defendants' failure so significant as to warrant striking the Defendants' motions for summary judgment.

First, it was never the Court's design to require the parties to exchange statements of

undisputed facts in support of summary judgment motions 26 days *before* the close of discovery. Thus, under the original scheduling order, a party's proposed statement of undisputed facts was to be exchanged on August 20, 2024 – a full six weeks *after* the close of discovery. *See* (Doc. 48). The parties sought and received from the Court eight extensions of the case management dates and largely compressed in their final stipulated request deadlines to complete discovery and file both non-dispositive and dispositive motions. *See* (Docs. 163, 164). Nowhere in their stipulated requests did the parties represent that they sought such a schedule to facilitate engagement in supplemental discovery following service of a proposed statement of facts in support of summary judgment. *See* (Docs. 53, 65, 92, 121, 153, 159, 161, 163). Additionally, the Court made clear in its scheduling order the reasons it implemented the requirements for meeting and conferring and exchanging proposed statements of facts in advance of the motion filing deadline. *See* (Doc. 48 at 4). None of those reasons relates to discovery.

Second, counsel for Plaintiffs' repeated accusations that counsel for Defendants misrepresent the nature of the parties' discussions about and in advance of the summary judgment motion filings are belied by the record. In certain stipulations as early as April 8, 2025, the parties represent that they sought extensions due in part to Defendants' intent to file motions for summary judgment. *See* (Docs. 159, 161, 163). As such, Plaintiffs were at least aware that Defendants had, for some time, intended to move for summary judgment, and Plaintiffs stipulated to allow the continuance of said deadlines. Plaintiffs did not oppose said continuances nor assert any objections at those times. *See*, *e.g.*, (Doc. 163 at 2) ("The parties have discussed Defendants' planned motion for summary judgment and have met and conferred regarding entering into stipulations for the dismissal of certain defendants. The parties are still engaged in those discussions. At least four of those to be (possibly) dismissed are specifically addressed in the deliberate indifference and qualified immunity arguments in the MSJ."). Given the undisputed fact that the parties discussed Defendants' anticipated motions for summary judgment well in advance of their filing, instead of assuming Defendants would not be filing those motions when the pre-filing milestones passed without action by Defendants (*see* Doc. 184-1 ¶ 10), prudence dictates counsel for Plaintiffs should have inquired with counsel at that time to protect his rights.

1       Third, counsel for Plaintiffs sets forth no particulars as to what discovery or which depositions were compromised and how they were compromised, neither in the motions to strike nor the replies. Counsel attaches responses to interrogatories from certain Defendants which he notes as "deficient." (Doc. 190-1 ¶ 4). The attached responses are dated June 26, 2025. *See* (Docs. 190-2, 190-3, 190-4, 190-5, 190-6). It is not clear to the Court how said responses relate to the meet and confer requirements and statement of undisputed facts, or otherwise evidence prejudice. It appears to the Court that, if recent discovery responses were deficient and said deficiencies were the subject of a motion for summary judgment, Plaintiffs would have the opportunity to note as such by objecting to inclusion of any such facts in the statement of undisputed facts. Additionally, as the non-dispositive motion filing deadline had not yet passed and was on the same day as the dispositive motion filing deadline (August 7, 2025; Doc. 164), Plaintiffs could have brought a motion to compel, after themselves complying with informal discovery dispute conference procedures set forth in the scheduling order. (Doc. 48 at 3-4). Insofar as Plaintiffs assert that Defendants' deficient responses resulted in their inability to include relevant information in their opposition to the motions for summary judgment, the Court notes that Plaintiffs themselves stipulated to amend the scheduling order to set the non-dispositive motion filing deadline on the same date as the dispositive motion filing deadline, and thus cannot come now and contest foreseeable results of said scheduling. *See* (Doc. 163).

Further, counsel represents that, on June 27, 2025, he "noticed the depositions of Defendant De La Torre and Defendant Rivera," as well as "supervising transport deputy, Lt. Park," and that "several other depositions [] were to be taken after July 10, 2025, some of which were taken and some of which were taken off calendar for various reasons." Counsel states "Ms. Gutcher was aware that [Plaintiffs] intended to take several depositions after July 10, 2025." (Doc. 182-1 ¶¶ 5-6). Counsel asserts that, after County Defendants provided the draft statement of undisputed facts on August 1, 2025, "it was too late to reschedule the depositions that had been noticed or to notice the depositions of other persons." *Id.* ¶ 8. Counsel does not elaborate regarding which depositions were taken off calendar nor the "various reasons" therefore. Insofar as counsel intends to assert certain depositions were taken off calendar due to Defendants' failure to serve a statement of

undisputed facts as per the provisions of the scheduling order, that argument is unavailing. As noted above, given the undisputed fact that the parties discussed Defendants' anticipated motions for summary judgment well in advance of their filing, instead of assuming Defendants would not be filing those motions when the pre-filing milestones passed and simply taking discovery off calendar for that reason, prudence dictates counsel for Plaintiffs should have inquired with counsel at that time regarding scheduling depositions in light of any forthcoming dispositive motions. Additionally, and as noted prior, the Court made clear in its scheduling order the reasons it implemented the requirements for meeting and conferring and exchanging proposed statements of facts and scheduling of discovery was not one those reasons.

Lastly, Plaintiffs' reliance on case authority is misplaced. The *Garces* court concerned a late-filed motion for summary judgment, collected cases concerning late-filed motions, and noted that courts have discretion whether to consider such a motion. *Garces*, 2024 WL 1886620, at *2. The court in *Ski Lifts, Inc.*, noted that the plaintiff's motion for summary judgment was filed two weeks after the dispositive motion filing deadline. *Ski Lifts, Inc.*, 2020 WL 978505, at *2. The court in *Roberts* explained in striking all three motions for summary judgment that plaintiffs filed their motion a day after the dispositive motion filing deadline, as well as a separate statement of facts not permitted by the scheduling order; a defendant filed its motion one day after the deadline and the motion was over twice the length permitted by the local rules without leave for such; and another defendant's motion, though timely, was also overlong without having been given leave for such. The *Roberts* court allowed the parties an additional extension to refile their non-compliant motions. *Roberts*, 2019 WL 13227527, at *2. Here, it is undisputed that the Defendants' motions for summary judgment were timely filed, nor is there any dispute as to the briefing being overlong. Plaintiffs' motions to strike concern Defendants' failures to meet and confer and provide a statement of undisputed facts by the relevant deadlines and, thus, none of Plaintiffs' cited cases are directly comparable. Further, the Court notes that though the *Roberts* court did strike the non-compliant motions, the court granted an extension to allow the parties to refile compliant motions.

In sum, the sole, tangible prejudice Plaintiffs claim as a result of Defendants' failure to timely exchange statements of facts is the purported lessening of time during which Plaintiffs would

13

have had notice of the facts and could have better prepared an opposition to the issues raised therein. But as set forth above, it was never the Court's intent to provide for a party's taking of supplemental discovery six weeks after the close of discovery responsive to an opponent's proposed statement of facts. Further, the parties have agreed to an extension in the briefing schedule (Doc. 187), which the Court finds sufficient to ameliorate any resulting prejudice. *See Rezaipour v. Cnty. of Los Angeles*, No. CV-12-05005-MWF (VBKx), 2014 WL 12687111, at *1–2 (C.D. Cal. Aug. 26, 2014) ("Although defense counsel's failure to meet-and-confer is not excused, the Court will not strike the [m]otion … Dr. Rezaipour was not prejudiced by the failure to meet-and-confer because his counsel was able to file a timely and substantive opposition."); *Arellano v. Haskins*, No. 1:17-CV-01235-DAD, 2022 WL 1018275, at *2 (E.D. Cal. Apr. 5, 2022) ("… plaintiff has not shown that defendants' purported failure to meet and confer with him prior to filing their motion for summary judgment had any impact on his ability to oppose that motion … Not only was plaintiff granted an extension of time in which to file his opposition to defendants' motion, but in his opposition, plaintiff substantially opposed every aspect of defendants' motion."); *Reed v. Sandstone Props., L.P.*, No. CV 12-05021 MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion [for summary judgment] on the merits.").

Accordingly, Plaintiffs' motions to strike (Docs. 182, 183, 184) will be denied. The Court will reset briefing on the motions for summary judgment (Docs. 178, 179), as well as a continued hearing date and pre-trial conference. No other provisions of the operative scheduling order (Docs. 48, 164) will be affected by this order, including the trial date.

**IV.     Conclusion and Order**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' motions to strike (Docs. 182, 183, 184) are DENIED.
2. The deadline for Plaintiffs to oppose Defendants' motions for summary judgement is continued to **September 12, 2025**.
3. Any optional reply by Defendants in further support of their motions for summary judgment shall be filed by **September 22, 2025**.

4. The hearing on Defendants' motions for summary judgment (Docs. 178, 179) is continued before the undersigned in Bakersfield (CDB) to **October 16, 2025, at 10:30 a.m**.

5. The pre-trial conference is continued to **December 8, 2025, at 10:30 a.m**.

IT IS SO ORDERED.

Dated:   **August 26, 2025**                              /s/ 

UNITED STATES MAGISTRATE JUDGE